WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

ALBERT HOYER TORRES,)
)
Petitioner,)
) No. CV 07-411-TUC-CKJ
vs.)
)
DORA B. SCHRIRO, et al.,) **ORDER**
)
Respondents.)

Pending before the Court is the Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus by a Person in State Custody filed by Petitioner Albert Hoyer Torres ("Torres"). Respondents have filed an Answer and Petitioner has filed a Reply.

*Factual and Procedural Background*

The Court of Appeals of Arizona stated the facts as follows:

> . . . On September 19, 2003, Torres invited his former girlfriend, R, to his house for a visit. The two had remained friends after R. had ended their romantic relationship, and R. agreed to the visit. Shortly after R. arrived, she received a phone call from her son, asking her to stop by his house after she left Torres's. The conversation angered Torres. He pushed R. onto the floor and began punching her in the face. This caused her left eye to swell shut and the right side of her lip to be cut, bruised and swollen.
>
> When R. stated that she needed to go to the hospital, Torres agreed to take her, but wanted her to first go home and change her shirt so she could tell medical personnel that her injuries resulted from a fall. Upon arriving at R.'s house, Torres exited the car, but R. initially remained inside to avoid being seen by a neighbor in R.'s injured condition. After she exited the car, a passing driver, M., one of her son's friends, recognized R. and noticed that something was wrong with her face. M. stopped and asked if Torres had hit her. When R. responded that he had, Torres walked away. R. called the police later that night to report the assault, and Torres was arrested five days later.

Respondents' Ex. C, pp. 2-3. The Court of Appeals further stated:

> . . . the jurors received ample information from which they could determine the nature of the victim's injuries. R. testified that she had been unable to see through her eye for five to seven days because it had been swollen shut, and that a mark remained on her eye for about three months. Officer Rohr, who responded to R.'s call the night of the assault, testified that she had a swollen eye and lacerations on her swollen lip. The state provided the jury with photographs of R.'s injuries taken on the night of the incident. And, Detective Fry interviewed R. four days after the assault and testified that at the time of the interview her eye was still swollen, that he could see "a portion of her eye but not very much," and that she still had lacerations on her lip, which was also still swollen.

*Id.*, pp. 5-6. These facts are presumed to be correct. *See* 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to a judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."); *Wainright v. Witt*, 469 U.S. 412, 426, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985) (state court's findings are entitled to a presumption of correctness); *Williams v. Rhoades*, 354 F.3d 1101, 1106 (9th Cir. 2004).

Torres was indicted on Count 1, aggravated assault involving the use of a deadly weapon (a knife), Count 2, kidnapping, and Count 3, aggravated assault causing temporary but substantial disfigurement or a temporary but substantial loss or impairment of any body part or organ, or a fracture of any body part.[1] Respondents' Ex. E. The matter proceeded to trial and a jury found Torres guilty of simple assault, not guilty of kidnapping, and guilty of aggravated assault involving temporary/substantial disfigurement or impairment.

In a separate proceeding, the State proved Torres had two prior felony convictions. The sentencing court imposed "time served" for the simple assault and the presumptive 10–year prison term for the Class 4 aggravated assault with two priors. *See* A.R.S. §

Torres filed a direct appeal with the Court of Appeals of Arizona. Torres presented

---

[1] Respondents point out that there was never any allegation that the victim suffered any kind of fracture.

1 | the following issues:

> I. The statute defining aggravating assault based on temporary but substantial disfigurement or impairment of any body organ or part is unconstitutionally vague.
>
> II. The trial court erred by refusing to inform the jury that [the victim] refused a pretrial defense interview.

Respondents' Ex.G, p. 6. The Court of Appeals rejected the claims in a March 31, 2005, Memorandum Decision and affirmed Torres's conviction and sentence. Respondents's Ex. C, p. 11. On April 27, 2005, Petitioner filed a petition for review to the Supreme Court of Arizona. On October 4, 2005, the Supreme Court denied the petition for review. Petition, Exhibit. The mandate was issued on December 16, 2005. Respondents' Ex. I.

On November 3, 2005, Torres filed a Notice of Post–Conviction Relief. An October 17, 2006, order by the post-conviction court indicates that Torres did not file a Petition for Post-Conviction Relief. Respondents' Ex. K. Further, the court indicated the post-conviction proceedings would be precluded if Torres did not file a Petition for Post-Conviction Relief by November 15, 2006.

On or about August 20, 2007, Torres filed a Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus by a Person in State Custody ("Petition"). Torres has presented two claims for relief:

1. The aggravated assault statute is unconstitutionally vague and fails to adequately define its terms and the elements to commit the crime.

2. Torres's due process rights were violated by precluding Torres from conducting a pre-trial interview of the victim. Because Torres was not permitted to interview the victim, Torres asserts that he did not learn of other witnesses until trial. Torres also asserts the jury instructions did not cure the due process violation and that he was prejudiced by the trial court's failure to permit him to cross-examine the victim regarding her refusal to provide the information pre-trial.

Respondents have filed an Answer and Torres has filed a Traverse.

*Statute of Limitations*

This Court must review claims consistent with the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Under the AEDPA, a state prisoner must generally file a petition for writ of habeas corpus within one year from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1); *Shannon v. Newland*, 410 F.3d 1083 (9th Cir. 2005). Respondents concede that Torres has complied with the statute of limitations. The Court finds the Petition is timely.

*Standard of Review*

Federal courts may consider a state prisoner's petition for habeas relief only on the grounds that the prisoner's confinement violates the Constitution, laws, or treaties of the United States. *See Reed v. Farley*, 512 U.S. 339, 347, 114 S.Ct. 2291, 2296, 129 L.Ed.2d 271 (1994). Indeed, a habeas corpus petition by a person in state custody:

> shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see also Williams v. Taylor*, 529 U.S. 362, 412, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000). General improprieties occurring in state proceedings are cognizable only if they resulted in fundamental unfairness and consequently violated a petitioner's Fourteenth Amendment right to due process. *See generally, Estelle v.*

- 4 -

*McGuire*, 502 U.S. 62, 67-68, 112 S.Ct. 475, 479, 116 L.Ed.2d 385 (1991).

This Court must review claims consistent with the provisions of the AEDPA. "The Act limits the ability of federal courts to reexamine questions of law and mixed questions of law and fact." *Jeffries v. Wood*, 114 F.3d 1484, 1498 (9th Cir. 1997). Indeed, the AEDPA creates "an independent, high standard to meet before a federal court may issue a writ of habeas corpus to set aside state-court rulings." *Uttecht v. Brown*, 551 U.S. 1, 127 S.Ct. 2218, 2224, 167 L.Ed.2d 1014 (2007), *citations omitted*; *see also Lindh v. Murphy*, 521 U.S. 320, 334 n. 7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997) (the amended statute creates a "highly deferential standard for evaluating state-court rulings"). This Court may only overturn a state court finding if a petitioner shows by clear and convincing evidence that the finding was erroneous. *See* 28 U.S.C. § 2254(e)(1). Additionally, the Supreme Court has stated:

> A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts. The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principles from our decisions but unreasonably applies it to the facts of the particular case. The focus on the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in Williams that an unreasonable application is different from an incorrect one.

*Bell v. Cone*, 535 U.S. 685, 694, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002), *citations omitted*.

*Exhaustion of State Remedies*

Before a federal court may review a petitioner's claims on the merits, a petitioner must exhaust his state remedies, i.e., have presented in state court every claim raised in the federal habeas petition. *See Coleman v. Thompson*, 501 U.S. 722, 731, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S.Ct. 1728, 1732, 144 L.Ed.2d 1 (1999) (a state prisoner in a federal habeas action must exhaust his claims in the state courts "by invoking one complete round of the State's

established appellate review process" before he may submit those claims in a federal habeas petition); *Swoopes v. Sublett*, 196 F.3d 1008, 1010 (9th Cir. 1999). Exhaustion of state remedies is required in order to give the "State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights . . . To provide the State with the necessary opportunity, the prisoner must fairly present his claim in each appropriate state court . . . thereby alerting that court to the federal nature of the claim." *Baldwin v. Reese*, 541 U.S. 27, 29, 124 S.Ct. 1347, 1349, 158 L.Ed.2d 64 (2004), *internal quotation marks and citations omitted*.

In Arizona, exhaustion is satisfied if a claim is presented to the Arizona Court of Appeals. A discretionary petition for review to the Supreme Court of Arizona is not necessary for purposes of federal exhaustion. *Swoopes*, 196 F.3d at 1010; *State v. Sandon*, 161 Ariz. 157, 777 P.2d 220 (1989) (in non-capital cases, state remedies are exhausted by review by the court of appeals). A claim is "fairly presented" if the petitioner has described the operative facts and legal theories on which his claim is based. *Anderson v. Harless*, 459 U.S. 4, 6, 103 S.Ct. 276, 74 L.Ed.2d 3 (1982); *Picard v. Connor*, 404 U.S. 270, 275, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971). In state court, the petitioner must describe not only the operative facts but also the asserted constitutional principle. The United States Supreme Court has stated:

> If state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution. If a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court.

*Duncan v. Henry*, 513 U.S. 364, 365-66, 115 S.Ct. 887, 130 L.Ed.2d 865 (1995).

Respondents concede that Torres has exhausted his state court remedies. The Court finds that Torres has exhausted his state court remedies.

*Aggravated Assault Statute*

Torres asserts that the aggravated assault statute is unconstitutionally vague and

fails to adequately define its terms and the elements to commit the crime. As to this issue, the Court of Appeals stated:

> Torres first argues that the portion of the aggravated assault statute under which he was convicted, A.R.S. § 13-1204(A)(11), is unconstitutionally vague. The statute renders an assault a class four felony if it "causes temporary but substantial disfigurement, temporary but substantial loss or impairment of any body organ or part, or a fracture of any body part." *Id*. Torres claims the terms "substantial" and "disfigurement" are subjective and provide no meaningful distinction between a misdemeanor and a felony assault. We review *de novo* the constitutionality of a statute. *State v. McDermott*, 208 Ariz. 332, ¶ 12, 93 P.3d 532, 535 (App. 2004). If possible, we must construe a law in a constitutional manner when it has been challenged on the basis of vagueness. *See State v. McLamb*, 188 Ariz. 1, 5, 932 P.2d 266, 270 (App. 1996). And, Torres has the burden of establishing the invalidity of the statute beyond a reasonable doubt. *See id*.
>
> "The void for vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary persons could understand what is prohibited and in a manner that does not encourage arbitrary enforcement." *State v. Thompson*, 138 Ariz. 341, 344, 674 P.2d 895, 898 (App. 1984). "A statute is not void for vagueness because it fails to explicitly define a term or because it can be interpreted in more than one way." *McDermott*, 208 Ariz. 332, ¶ 13, 93 P.3d at 536. In interpreting a statute, we apply the plain meaning of its words and phrases. A.R.S. § 1-213 ("Words and phrases shall be construed according to the common and approved use of the language."). The term disfigurement has been defined as "'[t]hat which impairs or injures the beauty, symmetry or appearance of a person or thing; that which renders unsightly, misshapen, or imperfect, or deforms in some manner.'" *State v. Garcia*, 138 Ariz. 211, 214, 673 P.2d 955, 958 (App. 1983), *quoting Black's Law Dictionary* 554 (Rev.4th ed. 1968); *see also Moreno v. Indus. Comm'n*, 122 Ariz. 298, 299, 584 P.2d 552, 553 (App. 1979) ("To disfigure is to mar the appearance of an object."). The term has long been used in Arizona under the definition for "serious physical injury" as related to aggravated assault. *See* A.R.S. §§ 13-105(34), -1204(A)(1).
>
> The term "substantial" has a commonly understood meaning. It is defined as "considerable in amount, value or worth." *Webster's Third New International Dictionary* 2280 (1971); *see also In re Maricopa County Juvenile Action No. JS-501568*, 177 Ariz. 571, 576 n. 1, 869 P.2d 1224, 1229 n.1 (App. 1994); *In re Maricopa County Juvenile Action No. JV-123196*, 172 Ariz. 74, 77, 834 P.2d 160, 163 (App. 1992). The term has also been used in, and applied by, numerous Arizona criminal statutes. *See, e.g.*, A.R.S. §§ 13-823(A)(3), -1005(D), -1201, -2508(A)(2), -3961(C), -3987. Torres cites no Arizona criminal cases, and we have found none, expressing doubt over the meaning of either "substantial" or "disfigurement." Both terms can be understood by persons of average intelligence and therefore, neither term renders the statute unconstitutionally vague. *See State v. Varela*, 120 Ariz. 596, 599, 587 P.2d 1173, 1176 (1978).
>
> Torres also claims that the language of the statute fails to adequately preserve a meaningful distinction between a simple physical injury, which constitutes a misdemeanor assault, and a temporary but substantial disfigurement, a felony assault. But the terms "simple physical injury" and "temporary but substantial disfigurement" are not synonymous. Nor does Torres explain why the public would be incapable of understanding the difference between those two phrases. Because we have already concluded that the phrase "temporary but substantial

- 7 -

> disfigurement" can be understood by persons of average intelligence, we reject this argument as well.
>
> Torres argues that because the state presented no expert medical testimony on what constitutes a "substantial" physical injury, the statute is vague as applied to the facts of his case. However, he offers no supporting authority for the contention that a medical expert was necessary. To the contrary, the jurors received ample information from which they could determine the nature of the victim's injuries. R. testified that she had been unable to see through her eye for five to seven days because it had been swollen shut, and that a mark had remained on her eye for about three months. Officer Rohr, who responded to R.'s call the night of the assault, testified that she had a swollen eye and lacerations on her swollen lip. The state provided the jury with photographs of R.'s injuries taken on the night of the incident. And, Detective Fry interviewed R. four days after the assault and testified that at the time of the interview her eye was still swollen, that he could see "a portion of her eye but not very much," and that she still had lacerations on her lip, which was also still swollen. Clearly, the jury did not need a medical expert to conclude that these injuries constituted "temporary but substantial disfigurement" or "temporary but substantial loss or impairment of any body part or organ" in order to constitute an aggravated assault under § 13-1204(A)(11). Therefore, we conclude that the statute is constitutional as applied to Torres.

Respondents' Ex. C, pp. 3-6.

The appellate court applied the "void for vagueness" doctrine set forth by the United States Supreme Court. *See Thompson*, 138 Ariz. at 344, 674 at 895, *citing Smith v. Goguen*, 415 U.S. 566, 572-73, 94 S.Ct. 1242, 39 L.Ed.2d 605 (1974) (vagueness doctrine includes fair notice or warning to defendant and reasonably clear guidelines to prevent arbitrary enforcement) and *Kolender v. Lawson*, 461 U.S. 352, 357, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983) (penal statute is not vague if ordinary person can understand what is prohibited and it does not impermissibly delegate policy making authority to police, i.e., the legislature establish minimal guidelines to govern law enforcement); *see also Forbes v. Napolitano*, 236 F.3d 1009 (9th Cir. 2000). The appellate court determined that the terms "substantial" and "disfigurement" could be understood by persons of average intelligence and, therefore, the statute was not unconstitutionally vague. Moreover, in light of the evidence presented to the jury, the appellate court found that the statute was constitutional as applied to Torres.

Torres argues that the definition of disfigurement would permit a simple physical injury (e.g., bruise, light scratch, abrasion) to qualify. Torres further argues that the term substantial does not differentiate between severe, moderate, or slight – therefore, used in

conjunction with the term disfigurement, there is nothing to distinguish between the misdemeanor and felony assaults. However, the appellate court considered this argument and determined that the term substantial had a commonly understood meaning. Although Torres asserts that the term substantial does not differentiate between severe, moderate, or slight, Torres fails to acknowledge that the commonly understood meaning of the term does differentiate this term. Further, when disfigurement is considered in conjunction with substantial, the meaning of the terms is not vague – the Court agrees with the appellate court that both terms can be understood by persons of average intelligence.

The Court finds that the appellate court's determination that the statute is not unconstitutional was not objectively unreasonable. 28 U.S.C. § 2254(d); *Bell v. Cone*, 535 U.S. at 698-99 (habeas court is not to make its own independent judgment, but is to determine whether state court applied federal authority in an objectively unreasonable manner). Ordinary people can understand was conduct is prohibited and the criminal offense is defined in such a manner that it does not encourage arbitrary and discriminatory enforcement. The Court finds Torres is not entitled to habeas relief on this claim.

*Pre-Trial Interview of Victim / Jury Instruction / Cross-Examination of Victim*

Torres asserts that his due process rights were violated because he was not permitted to interview the victim prior to the trial. Torres asserts that, because he was not permitted to interview the victim, Torres did not learn of other potential witnesses until trial. As to this issue, the appellate court stated:

<u>Victim's Refusal to Grant Pretrial Interview to Defense</u>

Torres first argues that it was fundamentally unfair for the victim to decline a pretrial interview and thereby hide or withhold information about two witnesses, M. and the neighbor. He contends that a pretrial interview would have allowed him to establish the identity of the neighbor and to test the truth of the victim's story by interviewing the neighbor. We review *de novo* whether a defendant has been denied due process rights. *State v. Rivera*, 207 Ariz. 69, ¶ 7, 83 P.3d 69, 72 (App. 2004).

Torres has provided us with no authority suggesting that he possessed any

- 9 -

procedural right to conduct a pretrial interview of R. Although defendants possess a right under the Sixth Amendment to the United States Constitution to confront witnesses against them at trial, the Confrontation Clause does not include an equivalent right to conduct pretrial interviews of those witnesses. *See Pennsylvania v. Ritchie*, 480 U.S. 39, 52-53, 107 S.Ct. 989, 999, 94 L.Ed.2d 40, 54 (1987). Nor does Torres possess any state procedural right to conduct a pretrial interview of R. To the contrary, Arizona law specifically authorizes crime victims to decline a defense interview, a right R. specifically asserted and Torres implicitly acknowledges in his appellate briefs. *See* A.R.S. § 13-4433(A); Ariz. R. Crim. P. 39(b)(11), 17 A.R.S.

Torres cites *State v. Willits*, 96 Ariz. 184, 191, 393 P.2d 274, 279 (1964), a case which stands for the proposition that the state should not be permitted to take advantage of its own misconduct is destroying or misplacing evidence. But the record contains no evidence that the state withheld or lost any relevant information in its possession or violated its disclosure duty in any fashion. Torres overlooks that the state has no duty to investigate the case on his behalf, *see Arizona v. Youngblood*, 488 U.S. 51, 58-59, 109 S.Ct. 333, 337-38, 102 L.Ed.2d 281, 290 (1988), and cites no authority supporting that a private citizen possesses such a duty. Because Torres possessed no procedural right to conduct a pretrial interview of R., we cannot conclude that he received a fundamentally unfair trial merely because R. testified to matters that he was unable to independently investigate in advance of trial.

<u>Denial of Torres's Requested Jury Instructions</u>

Torres next argues that he was denied due process and a fair trial by the trial court's refusal to allow an instruction that the victim refused a pretrial defense interview. While we generally "review [the] trial court's denial of a requested jury instruction for an abuse of discretion," *see State v. Brown*, 204 Ariz. 405, ¶ 7, 64 P.3d 847, 849-50 (App. 2003), we review constitutional questions *de novo*. *See Rivera*, 207 Ariz. 69, ¶ 7, 83 P.3d at 72. Before the close of the evidence, Torres submitted a jury instruction that stated in part, "If you find that a witness was not available due to the actions of another witness, *you may assume* that the unavailable witness would have given evidence unfavorable to the non-disclosing party." (Emphasis added.) The trial court ruled that Torres's proposed jury instruction was speculative and an improper comment on the evidence, and gave him a chance to provide supporting authority for the instruction after the court's noon recess. Instead, Torres simply revised his instruction and presented it to the court.

The revised instruction stated in part,

> If information has been introduced by the victim which has not been previously disclosed to the State or other State's witnesses, defense counsel has not been given an opportunity to investigate it and *you may therefore assume* that defense counsel would have provided rebuttal evidence had this information been provided in advance of trial.

(Emphasis added.) The court reaffirmed its earlier ruling and refused to allow the instruction. Torres then moved to reopen his case and recall the victim in order to establish that she had refused a pretrial interview. In the alternative, Torres was willing to stipulate to a jury instruction that the victim had the right to refuse an interview and she had exercised that right. The trial court denied both requests.

- 10 -

In instructing the jury, the court "may not discuss certain inferences which may or may not be drawn from the evidence and instruct the jury as to which inferences they should adopt." *State v. Wallen*, 114 Ariz. 355, 359, 560 P.2d 1262, 1266 (App. 1977). "The [Arizona C]onstitution prohibits the sort of judicial comment upon the evidence that would interfere with the jury's independent evaluation of that evidence." *State v. Rodriguez*, 192 Ariz. 58, ¶ 29, 961 P.2d 1006, 1011 (1998); *see* Ariz. Const. art. VI, § 27. Both of Torres's proposed instructions improperly set forth inferences that the jury should draw from the evidence if it found certain facts. Therefore, the trial court did not err in denying Torres's request to give the jury either of these instructions.

Denial of Torres's Motion to Recall R. for Cross-Examination

Torres argues that even if he was not entitled to a pretrial interview with R., he should have been allowed to cross-examine R. about her refusal to grant a pretrial defense interview. "We review a trial court's decision to limit the parameters of a defendant's cross-examination under an abuse of discretion standard." *State v. Riggs*, 189 Ariz. 327, 333, 942 P.2d 1159, 1165 (1997).

The Sixth Amendment guarantees to criminal defendants the right to cross-examine adverse witnesses. *Douglas v. Alabama*, 380 U.S. 415, 418, 85 S.Ct. 1074, 1076, 13 L.Ed.2d 934, 937 (1965). Nonetheless, trial judges retain latitude within the confines of the Confrontation Clause "to impose reasonable limits on such cross-examination based on concerns about . . . interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall*, 475 U.S. 673, 679, 106 S.Ct. 1431, 1435, 89 L.Ed.2d 674, 683 (1986). When a defendant seeks to cross-examine an alleged victim regarding her refusal to conduct a pretrial witness interview, a trial judge must thus determine whether the questioning "bears either on the issues in the case or on the credibility of the witness." *Riggs*, 189 Ariz. at 331, 942 P.2d at 1163, *quoting State v. Fleming*, 117 Ariz. 122, 125, 571 P.2d 268, 271 (1977).

Here, R. was the exclusive witness to the actual acts of violence perpetrated upon her by Torres. Accordingly, Torres could not hope for an acquittal unless he could successfully challenge her credibility. Once R. testified regarding the existence of two potential witnesses who could have corroborated portions of her testimony, her refusal to speak with Torres's counsel in advance of trial became relevant. Only by cross-examining R. on that topic could Torres alert the jury that he had no prior opportunity to investigate those witnesses and what they might have observed. Accordingly, under the specific circumstances of this case, the trial could would have erred had it prohibited Torres from cross-examining R. regarding her refusal to conduct a pretrial interview with Torres.

However, Torres asked no such questions during his cross-examination of R. and the trial court prohibited no such line of questioning. Instead, Torres sought to recall R. the day following her testimony after the close of evidence to question her regarding the topic. We review a trial court's ruling on a party's request to recall a witness and reopen evidence for an abuse of discretion. *State v. Delvecchio*, 110 Ariz. 396, 404, 519 P.2d 1137, 1145 (1974).

In assessing Torres's request to reopen, the trial court was entitled to consider whether Torres had already achieved all the relevant purposes of his cross-examination during his previous encounter with the witness. *Id*. ("'A party has no right to use further cross-examination to repeat or re-emphasize matters already covered on direct or cross-examination.'"), *quoting State v. Loftis*, 89 Ariz. 403,

> 405-06, 363 P.2d 585, 587 (1961). During his examination of R., Torres questioned R. regarding M.'s identity and why R. had been unable to provide law enforcement with any identifying information about M. That line of questioning, and R.'s responses, implicitly alerted the jury that Torres did not know M.'s last name and could not have investigated him in advance of trial. Because Torres was able to probe R. regarding her inability to secure M.'s last name, and because neither the state nor the trial court prohibited Torres from asking R. further questions about the other "neighbor" who R. claims may have seen her in the car with Torres, the trial court did not abuse its discretion when it declined to allow Torres to reopen the evidence and recall R. as a witness.

Respondents' Ex. C, pp. 6-11.

Torres has not pointed to a "clearly established" United States Supreme Court precedent to support this claim. Rather, the Supreme Court has determined that a criminal defendant has no pre-trial right to interview the witnesses against him; confronting adverse witnesses is a trial right. *Pennsylvania v. Ritchie*, 480 U.S. 39, 53, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987) (ability to question adverse witnesses "does not include the power to require the pretrial disclosure of any and all information that might be useful in contradicting unfavorable testimony"); *Barber v. Page*, 390 U.S. 719, 725, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968) (right to confrontation a "trial right"). In determining whether the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law," the phrase "Federal law" refers exclusively to United States Supreme Court precedent. *Lockyer v. Andrade*, 538 U.S.63, 71-72; 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003); *Ramdass v. Angelone*, 530 U.S. 156, 165–66, 120 S.Ct. 2113, 147 L.Ed.2d 125 (2000); *Williams v. Taylor*, 529 U.S. 362, 412, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000); *Smith v. Curry*, 580 F.3d 1071 (9th Cir. 2009); *Clark v. Murphy*, 331 F.3d 1062, 1069 (9th Cir. 2003) ("While circuit law may be 'persuasive authority' for purposes of determining whether a state court decision is an unreasonable application of Supreme Court law . . . only the Supreme Court's holdings are binding on the state courts and only those holdings need be reasonably applied."), *citations omitted*. Federal habeas relief is not available on this claim. *See* 28 U.S.C. § 2254(d); *Reed*, 512 U.S. at 347; *Williams*, 529 U.S. at 412.

Moreover, a claim of instructional error does not raise a cognizable federal claim

unless the error "so infected the entire trial that the resulting conviction violates due process." *Estelle*, 502 U.S. at 71-72; *Henderson v. Kibbe*, 431 U.S. 145, 154, 97 S.Ct. 1730, 1736-37, 52 L.Ed.2d 203 (1977); *Cupp v. Naughten*, 414 U.S. 141, 146-47, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973). In determining whether a constitutional violation has occurred, the alleged instructional error must be viewed in the light of all the instructions given, as well as the trial record, taken as a whole. *See Estelle*, 502 U.S. at 72. Where, as here, a defendant does not have a pre-trial right to interview the witnesses against him, a defendant's assertion that the jury instructions did not cure the alleged due process violation is without merit. Federal habeas relief is not available on this claim.[2] *See* 28 U.S.C. § 2254(d); *Reed*, 512 U.S. at 347; *Williams*, 529 U.S. at 412.

Torres also asserts that the trial court violated his federal rights in not permitting the victim to be recalled for further cross-examination after the close of evidence. The appellate court considered this claim under *Van Arsdall*, 475 U.S. at 679 (trial judges retain latitude within the confines of the Confrontation Clause "to impose reasonable limits on such cross-examination based on concerns about . . . interrogation that is repetitive or only marginally relevant"), and determined that the trial court did not abuse its discretion in denying further cross-examination, i.e., the appellate court determined there was no error. *See also Holley v. Yarborough*, 568 F.3d 1091 (9th Cir. 2009). The appellate court considered that Torres had questioned the victim regarding the witness' identity, why the victim had not been able to provide law enforcement with identifying information about the witness, and the victim's inability to secure the witness' last name.[3] The appellate court also considered that Torres was not prohibited from asking the victim further questions about the other neighbor.

This Court does not find that the state court rulings were objectively unreasonable

---

[2] Indeed, the Court notes that the appellate court relied on state law in resolving this issue.

[3] The Court notes that Torres, in his Traverse, asserts that he was prevented from eliciting the substance of the evidence at trial. This assertion fails to acknowledge that Torres was permitted to cross-examine the witness.

- 13 -

1  in light of the cross-examination that had already been conducted.  *See* 28 U.S.C. §
2  2254(d); *Bell v. Cone*, 535 U.S. at 698-99 (habeas court is not to make its own
3  independent judgment, but is to determine whether state court applied federal authority
4  in an objectively unreasonable manner).  The Court finds Torres is not entitled to habeas
5  relief on this claim.

*Certificate of Appealability ("COA")*

Rule 11(a), Rules Governing Section 2254 Cases, requires that in habeas cases the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Such certificates are required in cases concerning detention arising "out of process issued by a State court", or in a proceeding under 28 U.S.C. § 2255 attacking a federal criminal judgment or sentence.  28 U.S.C. § 2253(c)(1).  Here, the Petition is brought pursuant to 28 U.S.C. § 2254, and challenges detention pursuant to a State court judgment.  This Court must determine, therefore, if a COA shall issue.

The standard for issuing a COA is whether the applicant has "made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward:  The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000).  "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id*.  In the certificate, the Court must indicate which specific issues satisfy the showing.  *See* 28 U.S.C. § 2253(c)(3).

The Court determined that the appellate court's determination that the aggravated

assault causing temporary but substantial disfigurement or a temporary but substantial loss or impairment of any body part or organ statute is not unconstitutional was not objectively unreasonable. Similarly, the Court determined that the state courts' rulings regarding Torres's request to reopen and conduct further cross-examination of the victim was not objectively unreasonable. The Court also determined that federal habeas relief is not available to Torres on his claim that he was prohibited from interviewing the victim prior to trial. The Court finds that reasonable jurists would not find this Court's assessment of the constitutional claims debatable or wrong. A COA shall not issue as to these claims.

Any further request for a COA must be addressed to the Court of Appeals. *See* Fed. R.App. P. 22(b); Ninth Circuit R. 22-1.

Accordingly, IT IS ORDERED:

1. Torres's Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus by a Person in State Custody is DENIED;

2. This matter is DISMISSED with prejudice;

3. The Clerk of the Court shall enter judgment and shall then close its file in this matter, and;.

4. A Certificate of Appealability shall not issue in this case.

DATED this 12th day of February, 2010.

_____
Cindy K. Jorgenson
United States District Judge